**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **FELIPE SANTOS JR., an Individual and GEMMA SANTOS, an Individual,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**U.S. BANK N.A., a Delaware Corporation; AURORA LOAN SERVICES, LLC, a Delaware Corporation; GREENPOINT MORTGAGE FUNDING, INC., a New York Corporation; and DOES 1 through 10, inclusive,**<br><br>**Defendants.** | **CIV-F-09-0916 AWI DLB**<br><br>**ORDER RE: MOTION TO DISMISS** |

## I. History[1]

Plaintiffs Felipe Santos, Jr. and Gemma Santos purchased a home at 10111 Fitzgerald Drive, Bakersfield, CA 93311 ("Property"). They refinanced their mortgage on the property on February 7, 2007. Defendant Greenpoint Mortgage Funding, Inc. ("Greenpoint") was the originating lender. Defendant U.S. Bank, N.A. ("US Bank") was the assignee of the mortgage. Defendant Aurora Loan Services, LLC ("Aurora") was the loan servicer. Plaintiffs owed $436,206.71 on the prior mortgage, replacing it with a new mortgage for $492,000. The

---

[1]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained therein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

mortgage was a variable rate loan with an initial rate of 7.375% and a maximum rate of 12.375% and minimum rate of 2.750%. As part of the refinance, Plaintiffs paid a number of miscellaneous fees Plaintiffs allege are duplicative and unreasonable. Plaintiffs also allege a number of disclosures were not provided. By April 10, 2009, Plaintiffs fell behind on their mortgage payments.

Plaintiffs filed suit on May 21, 2009 in federal district court. Defendants Greenpoint and Aurora filed motions to dismiss. Plaintiffs filed a First Amended Complaint ("FAC") on October 12, 2009. In thhe FAC, Plaintiffs made four claims against all Defendants: (1) rescission under the Truth In Lending Act ("TILA"); (2) monetary damages under TILA; (3) statutory damages under the Real Estate Settlement Procedures Act; and (4) monetary damages under California's Unfair Competition Law ("UCL"). Defendant Greenpoint and Aurora again filed motions to dismiss. No timely opposition was received and the matters were taken under submission. The parties entered into discussions and Plaintiffs voluntarily dismissed all claims against Defendants Aurora and US Bank on February 22, 2010. Plaintiffs maintain their claims against Defendant Greenpoint and filed a late opposition to Greenpoint's motion to dismiss on February 21, 2010. Though Plaintiffs' opposition was filed late, the court will consider Plaintiffs' arguments as they help to advance the course of litigation.

## II. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)....a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007), citations omitted. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not shown that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citations omitted. The court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). The court must also assume that "general allegations embrace those specific facts that are necessary to support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990), citing Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds at 127 S. Ct. 1955, 1969. Thus, the determinative question is whether there is any set of "facts that could be proved consistent with the allegations of the complaint" that would entitle plaintiff to some relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). At the other bound, courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated...laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court is generally limited to reviewing only the complaint. "There are, however, two exceptions....First, a court may consider material which is properly submitted as part of the complaint on a motion to dismiss...If the documents are not physically attached to the complaint, they may be considered if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. Second, under Fed. R. Evid. 201, a court may take judicial notice of matters of public record." Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), citations omitted. The Ninth Circuit later gave a separate definition of "the 'incorporation by reference' doctrine, which

permits us to take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005), citations omitted. "[A] court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss. Facts raised for the first time in opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003), citations omitted.

If a Rule 12(b)(6) motion to dismiss is granted, claims may be dismissed with or without prejudice, and with or without leave to amend. "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc), quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). In other words, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## III. Discussion

### A. Truth In Lending Act

In the first two counts, Plaintiffs seeks rescission and monetary damages under TILA and Regulation Z (regulation issued by the Federal Reserve to implement TILA) based on allegations that they did not receive required disclosures. TILA "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights. Failure to satisfy the Act subjects a lender to criminal penalties for noncompliance, as well as to statutory and actual damages traceable to a lender's failure to make the requisite disclosures, see §1640....the Act also authorizes a borrower whose loan is secured with his 'principal dwelling,' and who has been denied the requisite disclosures, to rescind the loan transaction entirely." Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412 (1998), citations omitted.

**1. Rescission**

Greenpoint asserts that Plaintiffs can not rescind the mortgage because they have not alleged the ability and willingness to return the $492,000 principal. Plaintiffs assert that they "may keep any money or property, and has no obligation to tender, until the Defendants have cancelled the mortgage lien, or security interest in the property, and return any money or property given to the Defendants or to anyone else in connection with this transaction....Plaintiffs cannot tender an exact and definite amount since Defendant unfairly failed to provide them 'with an itemization of the loan disbursements, the loan charges, the current principal balance, and all payments received...so that we may determine the exact amount needed for tender' despite Plaintiff's unequivocal and clear demand. Because of the detrimental act of Defendant [] AURORA, Plaintiffs are deemed to have substantially complied with the offer to tender." Doc. 20, FAC, at 10:5-8 and 10:28-11:4. Courts have discretion in determining the sequence of events concerning rescission; "a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any. Rather, under the statute and the regulation, the security interest 'becomes void' only when the consumer 'rescinds' the transaction. In a contested case, this happens when the right to rescind is determined in the borrower's favor." Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1172 (9th Cir. 2003), emphasis in original. Plaintiffs argue that "Yamamoto did not hold that a Plaintiff must plead the ability to tender in order to state a claim for rescission. Rather, it merely established that the court has discretion to require the Plaintiff to produce evidence of the ability to tender prior to issuing a final ruling on the rescission claim." Doc. 36, Opposition, at 5:8-11. Rescission is an empty remedy without Plaintiffs' ability to pay back the principal of the loan (less interest, finance charges, etc.). Requiring Plaintiffs to allege that they can tender at this point in the litigation is consistent with Yamamoto. See Gonzalez v. First Franklin Loan Services, 2010 WL 144862, *5 (E.D. Cal. 2010); Avina v. BNC Mortg., 2009 WL 5215751, *2 (N.D. Cal. 2009); Farmer v. Countrywide Financial Corp., 2009 WL 1530973, *5 (C.D. Cal. 2009); Pagtalunan v. Reunion Mortgage Inc., 2009 WL 961995, *3 (N.D. Cal. 2009); Garza v. American Home Mortg., 2009

WL 188604, *5 (E.D. Cal. 2009).

Greenpoint also argues that the Property is not Plaintiff's primary dwelling. Under TILA, rescission is only available as a remedy in property transactions when the property is "used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. §1635(a). "The term 'dwelling' means a residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives." 15 U.S.C. §1602(v). "[T]he Board of Governors of the Federal Reserve System has issued Regulation Z to implement the TILA, see 12 C.F.R. § 226.1 (1991), et seq., and id. §226.23(a) reiterates the 'principal dwelling' requirement of section 1635(a). An official staff interpretation of this provision by the Board's Division of Consumer and Community Affairs, see 12 C.F.R. Pt. 226, App. C (1991), states: 'A consumer can only have one principal dwelling at a time. A vacation or other second home would not be a principal dwelling.' See 12 C.F.R. Pt. 226, Supp. I, at 392 (1991)." Scott v. Long Island Sav. Bank, 937 F.2d 738, 741 (2nd Cir. 1991).

Greenpoint points out two pieces of evidence on this matter that may be considered at the motion to dismiss stage. Attached to Plaintiff's First Amended Complaint is the loan application. On it, Plaintiffs state that they own two houses in addition to the Property. Greenpoint believes that Plaintiff describe the Property as a rental because it is labeled "R" which the form instructions identifies as a "rental being held for income." Upon close examination, the other two houses are marked as "R" but the Property is marked as "H." See Doc. 28, Ex. 1, at 4. The form instructions are silent regarding "H" but it could easily represent "home." Greenpoint also directs attention to Plaintiffs' assertions in another court case file in Fresno, Santos v. Countrywide Home Loans, Civ. Case No. 09-0912 concerning one of the other houses Plaintiffs own. In the complaint in that case, Plaintiffs state that 12814 Montbatten Place, Bakersfield, CA 93312 is their principal dwelling. See Civ. Case No. 09-0912, Doc. 1, at 2:26-27. The court can not draw a firm conclusion as to Plaintiffs' actual principal dwelling in the relevant time period. Judicial estoppel does not apply as Plaintiffs' representation in Case No. 09-0912 was not relied upon in any way. Under Ninth Circuit precedent, judicial estoppel only applies "where the court relied on, or 'accepted,' the party's previous inconsistent position."

Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001).

Plaintiffs do not directly respond to Greenpoint's argument, instead stating that their "right to rescind under TILA covers up to four family housing units. A dwelling is any 'residential structure or mobile home which contains one to four family housing units, or individual units of condominiums or cooperatives.' Ator v. City Bank & Trust Co., 749 F.2d 498 (8th Cir. 1984)." This does not resolve the problem with Plaintiffs' past representations. An individual can only have one principal dwelling at a time; the dwelling may be one building that physically encompasses up four family housing units. It is plain on its face (from the zip codes if nothing else) that the Property (10111 Fitzgerald Drive, Bakersfield, CA 93311) and 12814 Montbatten Place, Bakersfield, CA 93312 are not one dwelling. Thus, Plaintiffs have made misrepresentations in either this case or Case No. 09-0912.

Plaintiffs' claim seeking rescission under TILA is dismissed. Given the uncertainty surrounding Plaintiffs' ability to tender and the status of the Property, leave to amend is appropriate. Plaintiffs and Plaintiffs' counsel are warned to consider their representation in any new complaint carefully. Making false representations concerning the principal dwelling from this point forward may result in sanctions.

**2. Monetary Damages**

Greenpoint argues that a claim for monetary damages are barred by the one year statute of limitations. "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. §1640(e). The one-year limitations period "runs from the date of consummation of the transaction but...the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or non-disclosures that form the basis of the TILA action." King v. California, 784 F.2d 910, 915 (9th Cir. 1986). For purposes of TILA, "consummation" is defined as "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13); Grimes v. New Century Mortg. Corp., 340 F.3d 1007, 1009 (9th Cir.

2003). The refinance on the Property was signed on February 7, 2007. Plaintiffs did not file suit until May 21, 2009. Plaintiffs argue that equitable tolling should apply as "All these [TILA] violations came only to the attention of the Plaintiffs after they came to consult with their counsel." Doc. 20, FAC, at 13:1-2. Plaintiffs' position appears to be that the limitations period should be equitably tolled until a legal expert looked at their documents. The court finds this explanation is not an excusable delay sufficient to invoke this court's application of equitable tolling. "Entertaining such justification would open the floodgates, allow endless TILA suits to be filed under the guise that one's lawyer 'recently discovered the nondisclosure.'" Bezverkhov v. Cal-Western Reconveyance Corp., 2009 U.S. Dist. LEXIS 115469, *9-10 (E.D. Cal. Dec. 10, 2009). The court declines to institute a rule in which obtaining an attorney becomes the touchstone upon which tolling of the statute of limitations may be granted. Plaintiffs' claim for monetary damages under TILA is dismissed due to the statute of limitations. As Plaintiffs have demonstrated that they can not plead equitable tolling, leave to amend would be futile.

**B. Real Estate Settlement Procedures Act**

RESPA was enacted in order to bring about: (1) more effective advance disclosure to home buyers and sellers of settlement costs; (2) the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services; (3) a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and (4) significant reform and modernization of local record-keeping of land title information. 12 U.S.C. § 2601(b). In their third count, Plaintiffs allege Greenpoint violated RESPA under two theories: charging illegal fees and failing to respond to a qualified written request ("QWR").

**1. Illegal Fees**

"During the closing of the Transaction, Plaintiffs herein were charged with fees which were unearned, duplicative, unreasonable and unconnected to any actual services performed. Plaintiffs were made to pay endorsement fee of $25.00; recording trust deed of $80.00; doc prep

fees to Ticor of $150.00; overnight delivery fee of 18.70; origination fee of $4,920.00; document preparation fee to Greenpoint of $390.00; tax service fee to Greenpoint of $79.00; process/admin fee to Vision Mortgage & Realty of $1,365.00; notary fee of $150.00." Doc. 20, FAC, at 13:12-18. "(a) Business referrals. No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person. (b) Splitting charges. No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. §2607.

Greenpoint argues that the claim under Section 2607 is barred by the statute of limitations. "Any action pursuant to the provisions of section 6, 8, or 9 [12 U.S.C. §2605, §2607, or §2608] may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 6 [12 U.S.C. §2605] and 1 year in the case of a violation of section 8 or 9 [12 U.S.C. §2607 or §2608] from the date of the occurrence of the violation." 12 U.S.C. §2614. Again, Plaintiffs refinanced on February 7, 2007 but did not file suit until May 21, 2009, well more than one year later. In the opposition, Plaintiffs do not address this issue.

Plaintiffs' RESPA claim under 12 U.S.C. §2607 is dismissed. As with the TILA monetary damages cause of action, leave to amend is futile since no equitable tolling argument can be made.

**2. Qualified Written Request**

Plaintiffs allege that by letter dated December 9, 2008, "Plaintiffs also enclosed and sent to the Defendant AURORA, the RESPA Qualified Written Request (QWR)....Defendant Aurora failed to respond to the letter." Doc. 20, FAC, at 8:22-25. Under RESPA, "a qualified written request shall be a written correspondence, other than notice on a payment coupon or other

payment medium supplied by the servicer, that includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(b). "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." 12 U.S.C. §2605(e)(1)(a). "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure." 12 U.S.C. §2605(f).

First, Plaintiffs do not allege that a QWR was ever sent to Greenpoint. Second, RESPA does not require loan originators to respond to QWRs. Plaintiffs state "Defendant GREENPOINT Mortgage was the originating lender and may be considered a functional creditor or alternatively, is a Servicer strictly for administrative purposes subject to the Real Estate Settlement Procedures Act." Doc. 20, FAC, at 3:23-25. "The term 'servicer' means the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. §2605(i)(2). "The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10 [12 U.S.C. §2609], and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. §2605(i)(3). Plaintiffs state that "Defendant AURORA LOAN is or was the designated Servicer for the purported beneficiary." Doc. 20, FAC, at 3:12-13. Plaintiffs artful pleading that Greenpoint is a loan servicer subject to RESPA "strictly for administrative purposes" is insufficient. In their opposition, Plaintiffs do not address any of Greenpoint's arguments regarding the QWR response claim.

Plaintiffs' RESPA claim under 12 U.S.C. §2605 is dismissed. Leave to amend is granted to give Plaintiffs the opportunity to allege that a QWR was sent to Greenpoint and that Greenpoint was actually a servicer.

**C. Unfair Competition Law**

Plaintiffs' fourth count alleges violations of the UCL under a number of disparate theories. Unfair competition is defined to be "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code §17200. "[A]n action based on Business and Professions Code §17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder." Farmers Ins. Exch. v. Superior Court, 2 Cal. 4th 377, 383 (Cal. 1992). Failure to state a claim for the underlying law would negate this theory of UCL violation. "A court may not allow plaintiff to plead around an absolute bar to relief simply by recasting the cause of action as one for unfair competition." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir.2000); see also Vega v. JP Morgan Chase Bank, N.A., 2009 U.S. Dist. LEXIS 83763, *29 (E.D. Cal. Aug. 25, 2009). Based on the discussion below, Plaintiffs' UCL claim is dismissed with leave to amend.

**1. Fiduciary Duty**

Plaintiffs allege Greenpoint "violated their fiduciary duty for doing loan where it could reasonably lead to default by the Plaintiffs." Doc. 20, FAC, at 14:13-14. Greenpoint argues that no fiduciary duty exists as it is only the lender in this case. In order to sustain a claim for breach of fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist. LEXIS 71725, *12-13 (S.D. Cal. Aug. 14, 2009). "[A]bsent special circumstances...a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender." Oaks Management Corp. v. Superior Court, 145 Cal. App. 4th 453, 466 (Cal. Ct. App. 2006). "The relationship between a lending institution and its borrower-client is not fiduciary in nature. A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly

agree to subordinate its interests to act on behalf of and for the benefit of another. Nymark v. Heart Fed. Savings & Loan Assn., 231 Cal.App. 3d 1089, 1093 n.1 (Cal. Ct. App. 1991), citations omitted.

**2. California Civil Code Provisions**

Plaintiffs allege that Defendants have violated a number of provision of California law, citing Cal. Civ. Code §1916.7, §1918.5, §1920, and §1921. Doc. 20, FAC, at 14:15-15:8. Overall, it appears that Plaintiffs have misinterpreted the California Civil Code provisions.

Regarding Cal. Civ. Code §1916.7, Plaintiffs state "By restricting the downward adjustment of the mortgage rate in the Note to not less than 2.750% regardless of the downward movement of the index, lender Defendant GREENPOINT and assignee Defendant U.S. Bank violated California Civil Code CIV Section 1916.7(10)(c)II....Further the adjustable rate mortgage disclosure notice was not provided to the Plaintiff during the processing of this loan in violation of California Civil Code CIV Section 1916.7 10(c)." Doc. 20 FAC, at 14:25-28 and 15:3-5. A plain reading of Cal. Civ. Code §1916.7 shows it to require a disclosure statement be provided to borrowers if the loan meets certain very specific characteristics. Cal. Civ. Code §1916.7(b) and (c). The wording of Cal. Civ. Code §1916.7 does not appear to set out substantive regulations governing the terms of the loan; the court can find no case in which Cal. Civ. Code §1916.7 has been relied on to regulate what interest rates can be charged by the borrower. "[S]ection 1916.7 applies only to mortgage loans made pursuant to it. Cal. Civ. Code § 1916.7(b). Plaintiff has not alleged facts showing that section 1916.7 applied to her loan." Brittain v. IndyMac Bank, FSB, 2009 U.S. Dist. LEXIS 84863, *8 (N.D. Cal. Sept. 16, 2009); see also Gonzalez v. Alliance Bancorp, 2010 U.S. Dist. LEXIS 47943, *17 (N.D. Cal. Apr. 19, 2010). Similarly in this case, Plaintiffs have not alleged facts that suggest Cal. Civ. Code § 1916.7 applies. In fact, the allegation that the interest rates charged are not in accord with the terms set out in Cal. Civ. Code § 1916.7 suggest that the refinance of the Property is a loan that is not covered.

Greenpoint also points out that the disclosures required by Cal. Civ. Code § 1916.7

appear to be preempted in many circumstances by the federal Alternative Mortgage Transactions Parity Act of 1982 ("AMTPA") which provides in part "An alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation." 12 U.S.C. §3803. "[T]he term 'alternative mortgage transaction' means a loan or credit sale secured by an interest in residential real property...in which the interest rate or finance charge may be adjusted or renegotiated." 12 U.S.C. §3802(1)(A). The Ninth Circuit has stated that AMTPA does not provide for complete preemption, but only of those state law terms that conflict with AMTPA's terms. See Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 864 (9th Cir. 2003); Quicken Loans, Inc. v. Wood, 449 F.3d 944, 950 (9th Cir. Cal. 2006). "The language of the statute provides that conflicting state laws governing 'alternative mortgage transactions' are preempted where those transactions comply with relevant OTS regulations. See 12 C.F.R. 560.35, 560.210, 226.19(b), 226.20(c). Alternative, conflicting, or more rigorous disclosure requirements would interfere with housing creditors' ability to enter into alternative mortgage transactions. [The plaintiff] has not articulated a theory whereby defendants would be liable for violating Section 1916.7 of the California Civil Code in spite of the AMPTA. Nor has [the plaintiff] responded to defendants' assertion that the California Civil Code is preempted. Consequently, this claim cannot survive defendants' motion." Hafiz v. Greenpoint Mortage Funding, Inc., 652 F. Supp. 2d 1039, 1047-48 (N.D. Cal. 2009).

Plaintiffs claim "The Defendants must notify Plaintiffs of any changes in the interest rate and monthly payment of loan. Considering that the amortized rate changes, so the Plaintiffs should be notified. Defendants failed to do so and violated Civil Code Section 1918.5-1921.1920." Doc. 20, FAC, at 15:1-3. Cal. Civ. Code §1918.5 does not set out regulations but only provides definitions for certain terms. Cal. Civ. Code §1921 discusses disclosures before any loan is signed. These two sections do not appear to directly apply to Plaintiffs' factual allegations. In contrast, Cal. Civ. Code §1920 requires ongoing disclosures when the interest rate changes: "Before the due date of the first monthly installment following each change in the interest rate, notice shall be mailed to the borrower of the following: (A) The base index. (B) The

most recently published index at the date of the change in the rate. (C) The interest rate in effect as a result of the change. (D) Any change in the monthly installment. (E) The amount of the unpaid principal balance. (F) If the interest scheduled to be paid on the due date exceeds the amount of the installment, a statement to that effect and the amount of the excess, and the address and telephone number of the office of the lender to which inquiries may be made." Cal. Civ. Code §1920(b)(2). The court can not determine what is meant by "amortized rate changes" and how it necessitates disclosure by Greenpoint. Further, "the majority of adjustable rate mortgage loans in California originate under [AMTPA] which preempts state laws. Plaintiffs fail to allege facts showing that their loan originated under state laws rather than under AMTPA." Pagtalunan v. Reunion Mortg., Inc., 2009 U.S. Dist. LEXIS 34811, *12 (N.D. Cal. Apr. 8, 2009), citations omitted.

**3. TILA and Fair Debt Collection Practices Act**

Plaintiffs allege that Defendants' violations of TILA and the Fair Debt Collection Practices Act ("FDCPA") constitute violations of the UCL. Plaintiffs formally stated TILA claims in counts one and two. Plaintiffs formally stated an FDCPA claim in the original complaint, but not in the FAC. See Doc. 1, Complaint, at 9:11-21. As discussed above, the TILA claims have been dismissed. Greenpoint argues that Plaintiffs can not state an FDCPA claim as Greenpoint is not subject to FDCPA coverage. The FDCPA provides for civil suit against "any debt collector who fails to comply with any provision of this title." 15 U.S.C. §1692k. The term "debt collector" has been defined as

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another....
>
> *The term does not include*...(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. §1692a(6), emphasis added. Thus, as originating lender of the refinance of the

Property, Greenpoint appears to fall under 15 U.S.C. §1692(a)(6)(F)(ii).

## IV. Order

Defendant Greenpoint's motion to dismiss is GRANTED. Plaintiffs' First Amended Complaint is DISMISSED; Plaintiffs are granted leave to amend the first, third, and fourth causes of action, consistent with the analysis of this order. Any amended complaint must be filed within twenty-one (21) days of the filing of this order.

IT IS SO ORDERED.

**Dated: May 28, 2010**

**/s/ Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE